## No. XI.

### BOARD OF LAND COMMISSIONERS OF MILAM COUNTY V. WILLIAM W. BELL.

#### (See Note 5.)

*Appeal from Milam County.*

RUSK, CHIEF JUSTICE.—This cause came up upon appeal from the District Court of Milam County. The facts stated in the transcript of the record show that Bell applied to the board of land commissioners of that county claiming a certificate for one league and one labor of land as his headright. It is in proof that he was the head of a family, and that he emigrated to Texas on the —— day of October, 1836. The board refused to grant him a certificate for the quantity of land claimed; from which decision Bell appealed to the district court. The facts as stated were admitted and the cause submitted to the court, who determined that Bell was entitled to a league and labor of land, and awarded a peremptory mandamus against the said board of land commissioners, commanding them to issue to Bell a certificate for the same. From this decision an appeal was taken to this court.

The questions which present themselves are: First. Did the district court err in awarding the mandamus? Second. Is Bell entitled to a league and labor of land by law?

It is clear that a mandamus will not issue where the party has another legal and specific remedy. Where there is a judicial discretion vested in an inferior tribunal, it can not issue to control its judgment. It may issue commanding such tribunal to proceed to judgment, but can not direct what judgment shall be given. In this case, however, the mandamus seems to have had no other object than to order the board to issue a certificate, not upon its own, but upon the judgment of the court, which we hold to be competent; but a peremptory mandamus should not have issued until the board of land commissioners had refused to carry out the judgment of the court.

Upon the second question, whether Bell was entitled by law to a certificate for a league and labor of land, it has been contended by his counsel that the colonization law of Coahuila and Texas was in force until repealed by the passage of the land law by the Congress of Texas; that the laws of the Consultation declared them in existence; that the Constitution ratifies the laws of the Consultation, etc.

---

nant, 1 App. C., sec. 543; Wheeler v. Davis, 3 App. C., sec. 13; Carswell v. Crowther, 4 App. C., sec. 153; White v. Smith, 4 App. C., sec. 225; Wadley v. Johnson, 2 U. C., 739; Masterson v. Williams (T. Sup.), U. R. C., 1889; Frank v. Tatum (T. C. A.), U. R. C., 1892; Burch v. Burch (T. C. A.), U. R. C., 1894; Burrows v. Cox (T. C. A.), U. R. C., 1896; Davis v. Martin (T. C. A.), U. R. C., 1896. In such cases, appellate court will dismiss the appeal on its own motion. Messner v. Lewis, 17 T., 519; Holek v. Varona, 63 T., 65. When one of the defendants dies before trial, it will be presumed in favor of finality that the case was dismissed as to him. Smith

The Attorney-General contended that the adoption of the Constitution was a repeal of the colonization laws; that the Consultation having declared themselves a part of the Mexican Republic had no right to pass laws disposing of the public domain.

It is unnecessary for the court in this case to decide upon the validity of the laws of the Consultation, or what force and effect they should have, as the fifteenth article of the plan and powers of the Provisional Government, which is relied upon by the counsel for Bell, refers to laws that then existed; and if it be found that the colonization law has been repealed, then it follows that no rights were conferred by that article. The Decree No. 190, of the Congress of Coahuila and Texas, passed 28th April, 1832, section 38, repeals the colonization law of March, 1825, and substituted another colonization law, changing the conditions and reducing the quantity of land allowed to half a league, and this only upon condition that the head of the family should have at least one hundred head of cattle and horses, or six hundred head of smaller stock—stating, however, that no change should be made with respect to contracts which the executive had ratified, etc. By Decree No. 272, of the Congress of Coahuila and Texas, article 29, passed 26th March, 1834, this law was also repealed except so far as related to empressarios and other contracts in existence.

By Decree No. 309 it was declared that all families then residing in Texas should be entitled to the portions of lands designated by the colonization law of 1825, provided they possessed the qualifications required by that law.

It is clear, then, that at the date of the declaration of independence the colonization laws were not of force, except so far as related to contracts in existence, or to families who had arrived previous to the 2d of May, 1835.

The Constitution declares that all persons who resided in Texas on the day of the declaration of independence should be entitled to land in the proportions therein stated, but made no provision for allowing portions of lands as headrights to any who should arrive afterwards.

By the twenty-fourth section of an act passed by the Congress of Texas on the 22d December, 1836, it is declared that every emigrant who arrives in this Republic from and after the first day of January (then) next, and who was the head of a family, should be entitled to a conditional grant of twelve hundred and eighty acres of land. By this law those who arrived in Texas after the date of the declaration of independ-

v. Wilson, 18 T. C. A., 24. Appellate court may revise an interlocutory order of lower court refusing to proceed with the cause, and correct errors by mandamus. Kleiber v. McManus, 66 T., 48; Schultze v. McLeary, 73 T., 92; Grigsby v. Bowles, 79 T., 138; Fannin County v. Hightower, 9 T. C. A., 293; Schintz v. Morris, 13 T. C. A., 580. After final judgment, interlocutory may be revised on appeal. Gross v. McClaran, 8 T., 341; Stewart v. Jones, 9 T., 469; Stewart v. State, 42 T., 242; Holek v. Varona, 63 T., 65; O'Neal v. Bank, 64 T., 644; Fort Worth Ry. Co. v. Rosedale Ry. Co., 68 T., 163. Act of November 1, 1871 (Gammel's Laws of Texas, vol. 7, p. 17), authorizing appeals from interlocutory judgments, held void. Ward v. Ward, 37 T., 389;

ence and before the first day of January succeeding, were not provided for.

This law, it will be recollected, never went into operation as contemplated when it was passed, but was superseded and repealed by another law of Congress, passed 14th December, 1837. By the twenty-ninth section of the latter law it is declared that every volunteer who arrived in this Republic after the 2d of March, 1836, and before the first day of August, 1836, and had received, or might receive thereafter an honorable discharge, should receive the quantity of land which by that act was secured to original colonists. In the same section it is also enacted that every person who had arrived in Texas after the declaration of independence, and previous to the first of October, 1837, if the head of a family, etc., should be entitled to a conditional grant of twelve hundred and eighty acres of land. It is not contended that Bell had received an honorable discharge, or that he had even arrived here previous to the first of August, 1836.

From a view of all the laws upon the subject, we are of opinion that the appellee Bell was not entitled to more than a conditional grant of twelve hundred and eighty acres of land.

It is therefore ordered that the judgment of the court below be reversed and the cause remanded, in order that the appellee may obtain his certificate for the twelve hundred and eighty acres of land according to law.

*Reversed and remanded.*

JONES, JUSTICE.—I concur fully with the court that the appellee in this case is only entitled to twelve hundred and eighty acres of land. It appears to me to be unnecessary to step behind the declaration of independence to render the reasons for this judgment. As soon as our separation from Mexico took place, all the vacant domain belonging to that government became the property of the people of Texas, not individually, but as a nation. Vattel's Law of Nations lays down the doctrine (which has never been doubted), where a country is conquered, the vacant lands become the property of the nation in general and excludes all rights of individuals not previously acquired. He adds further that the nation, being the sole mistress of the property in its possession, after revolution and the establishment of a new government, may dispose of it as she thinks proper. I do not quote literally. The principle then being settled

City of Paris v. Mason, 37 T., 447; Dial v. Collins, 40 T., 367. Nor from an order overruling motion for new trial, nor until after final conviction. Shannon v. State, 7 T., 492; Lawrence v. State, 14 T., 432; Burrell v. State, 16 T., 147; O'Connell v. State, 18 T., 343; Calvin v. State, 23 T., 577; Nathan v. State, 28 T., 326; Dooly v. State, 33 T., 712; Murray v. State, 35 T., 472; Fulcher v. State, 38 T., 505 (overruling Nelson v. State, 32 T., 71; Hoppe v. State, 32 T., 388); Mayfield v. State, 40 T., 289; Anschincks v. State, 43 T., 587; Young v. State, 1 T. App., 65; Smith v. State, 1 T. App., 408; Butler v. State, 1 T. App., 638; Choate v. State, 2 T. App., 302; Butler v. State, 2 T. App., 529; Robinson v. State, 3 T. App., 47; Labaite v. State, 4 T. App., 169; Pennington v. State, 11 T. App., 281; Darnell v. State, 24 T. App., 6. In the following instances, judgments are not final and can not be appealed from. (a) Only for costs. Hanks v. Thompson, 5 T., 6; Warren v. Shuman, 5 T.,

that the nation or the government which separates from another nation or government, succeeds to all the vacant domain within its limits, the doctrine is equally clear that she can dispose of it as she pleases. Although revolutions do not divest vested rights, yet such an alteration in government as changes its past political relations operates as a repeal of all laws previously existing, so far as they may be construed to impart rights emanating from the government after revolution. The declaration of independence established a sovereignty of Texas and gave the government entire control over its vacant domain. The tenth section of the general provisions of the Constitution allots to all colonists then in the country, who had not received donations of land, their defined quantities. The claimant in the present case was not then in the Republic. The law of December, 1836, looked to those who *should* come into the country after the first day of January, 1837, and did not provide for those who emigrated between the date of the declaration of independence and the first day of January, 1837. The law of the 14th December, 1837, offered the first relief which was made for the emigrants, omitted by the statute of the 22d December, 1836, in the following terms: "Every person who has arrived in this Republic since the declaration of independence, and previous to the first day of October, 1837, who is a free white person and the head of a family, and who actually resides within the government with his family, shall be entitled to a conditional grant of 1280 acres of land, by paying the fees of office and surveying." It is under this law that the appellee must claim.

## No. XII.

### HARVEY, MARY ET AL. V. JNO. T. PATTERSON ET AL.

*Motion to dismiss.*

HEMPHILL, JUSTICE.—This cause came up for argument on a motion to dismiss the appeal on the following grounds, viz:

First. There was no notice of appeal in the cause given either to the defendants or their counsel.

Second. Because there is no appeal bond filed in this court or in the court below.

It seems that the appellants are persons of color, and after the decision of this case in the court below, it appears from the statement of the counsel of the appellants, though not certified in the record, that Mary, one of the plaintiffs, offered in open court and before the clerk thereof, to

441; Scott v. Benton, 6 T., 322; Hancock v. Metz, 7 T., 177; Bradshaw v. Davis, 8 T., 344; Fitzgerald v. Fitzgerald, 21 T., 415; Martin v. Wade, 22 T., 224; Holt v. Wood, 23 T., 474; Green v. Banks, 24 T., 522; Neyland v. White, 25 T., 319; Patterson v. Hall, 30 T., 464; I. & G. N. Ry. Co. v. Smith County, 58 T., 74; Eastham v. Sallis, 60 T., 576; American, etc., Co. v. City of Crockett (T. C. A.), U. R. C., 1899. (b) Overruling motion to quash writs of certiorari and attachment. Messner v. Lewis, 17 T., 519; Hamman v. Lewis, 34 T., 474; Holek v. Varona, 63 T., 65. (c) Quashing writ of sequestration. Little

take an oath that the plaintiffs were too poor to pay the fees, and too friendless and humble to be able to give any bond and security for costs; and that the clerk, under the sanction of the court, refused to receive the said oath. It was contended by appellants' counsel that if the said Mary had been permitted to take the said oath, the plaintiffs would have been entitled, under the twentieth section of an act organizing the district courts, to prosecute their appeal without giving the bond and security required by the fifteenth section of the said act.

It was argued in opposition that the plaintiffs being persons of color were, by the twenty-sixth section of said act, prevented from taking an oath in any case where a white person was concerned; and had the oath been taken, the appellants would not have thereby been exempted from giving the bond and security required by law in cases of appeals. The act in express terms exempts the person taking the oath from being charged with the costs of suit and the fees of counsel, but does not relieve a party appellant from giving the usual appeal bond. This right can not be extended to an appellant under this provision of the statute, unless by a looseness of construction which seems rather the assumption of legislative than the proper exercise of judicial power. The court are of opinion, without examining the other grounds in the case, that the appeal can not be prosecuted, unless the bond and security required by law is given, and it is therefore ordered and decreed that the same be dismissed.

*Dismissed.*

## No. XIII.

### PAMELA MANN v. A. S. THRUSTON.

(See Note 6.)

*Appeal from Harris County.*

JONES, JUSTICE.—The appellant's counsel moved to reverse the judgment of the district court upon the ground of insufficiency of testimony, and that no fact appeared by the record to have been proved upon which the jury could found a verdict. No exceptions seem to have been taken and no cause for error assigned by the appellant's counsel in the district court. It was clearly the *duty* of the appellant to bring up the facts by a bill of exceptions, or otherwise, from the district court, showing that the judgment was rendered upon slight testimony, against evidence, or contrary to law, otherwise the court must regard the verdict as being without attaint. In Davis v. Packard, 7 Peters, 282, it was decided, as it had been in several instances previously, that the Supreme Court "could

v. Morris, 10 T., 263. (d) Quashing indictment. State v. Paschal, 22 T., 584; State v. Thornton, 32 T., 104. (e) Order granting change of venue and order remanding case to court granting it. Wygall v. Treasurer, 33 T., 328; Vance v. Hogue, 35 T., 432. (f) Refusal to enter final judgment on verdict. Lane v. Ellinger, 32 T., 369. (g) Order of justice of peace dismissing suit for want of prosecution. Morgan v. Johnson, 4 T., 117. (h) Order dismissing petition of intervention. Stewart v. State, 42 T., 242. (i) Order granting motion to

look only to the record, to ascertain what was decided in the court below. The only question before the court was, whether the judgment was correct." The record in this case shows no intimation that the appellant was dissatisfied with the judgment, save the simple act of appealing, which was granted as a privilege of right. No objection was made to the evidence, if any was introduced, and if the judgment was permitted to go by default, or upon the statement of the appellee's counsel, the appellant must suffer by her supineness. The defendant in the court below can not come up here to show wrong in the plaintiff, when she was more in error herself. The right to attaint the verdict must be considered as waived by the omission of the plaintiff in error to file her exceptions in the court below at the time of the rendition of the judgment.

The motion is overruled and the judgment affirmed with damages and costs.

*Affirmed.*

## No. XIV.

### A. C. & A. K. ALLEN ET AL. v. THOS. W. WARD.

### A. C. & A. K. ALLEN ET AL. v. THOS. W. WARD.

(See Note 7.)

*Appeal from Harris County.*

HEMPHILL, JUSTICE.—The appeals in the cases above stated were brought up from the District Court for the County of Harrisburg, and depend upon the same state of facts. The appellee in this court (the plaintiff in the court below) recovered judgment against the appellants (who are defendants in the action) in both cases in the county court in January, 1838, from which judgments the defendants appealed to the district court. No statement of facts was sent up with the record; and at the December term of the district court in the same year, a mandamus was issued to the county court to send up the same, which being sent up in the vacation of the county court, and the district judge being of opinion that the same could only be given in at term time, the cause was continued. At the next session of the county court, the said statement was certified to in open court by the chief justice thereof, he being the only member of the court that had tried the cause still remaining in office. At

remove cause to Federal court. Appeal lies from refusal of motion. Rosenfield v. Condict, 44 T., 464; Durham v. Southern L. I. Co., 46 T., 182; Walker v. Howard, 10 T. C. A., 611. (j) Judgment against sureties alone on bail bond, and refusal of judgment on. Moore v. Schooner Anna Maria, 11 T., 655; Cox v. State, 34 T. Cr., 94. (k) Order allowing continuance. Dow v. Hotchkiss, 2 T., 471; Tinsley v. Trimble, 35 T., 425; Taylor v. Fore, 42 T., 256. (l) Granting new trial. Stewart v. Jones, 9 T., 469; Huston v. Starr, 12 T., 424; Goss v. McClaran, 17 T., 107; Dial v. Collins, 40 T., 367; Long v. Garnett, 45 T., 400; Morehead v. I. & G. N. Ry. Co., 46 T., 178; G. C. & S. F. Ry. Co. v. James, 73 T., 12; Hamilton v. Prescott, 73 T., 565; Schintz v. Morris, 13 T. C. A., 580; Hume v. Schintz, 16 T. C. A., 512; Lay v. Ballinger, 1 App. C., sec. 23. (m) Setting aside order discharging guardian. Lehman

the June term of the district court, the judgments in both cases in the county court were affirmed, from which the defendants appealed to this court.

It was contended that the judgments of the district court should be reversed on various grounds; and among others that the statement of facts sent up from the county court was not given at the term of the court when the trial was had; that it was given during a vacation of the said court; that it was not certified to by the whole of the members composing the same at the time of the trial. The provision of our statute (volume 2, page 94) requiring a statement of facts to be sent up to the Court of Appeals, is expressed in the following terms, viz: "That in all cases of appeals to the Supreme Court, the trial shall be on the facts as agreed on, or certified by the judge below," etc. The time at which this agreement between the parties as to the facts, or the certificate given by the judge, is not pointed out. It is not required—as it is by statutory regulations in many countries—that the statement of the facts should become a part of the record, properly so called, and be certified to by the clerk as constituting a portion of the proceedings on the trial below. Whether it would have been wise in Congress to have required the facts to have been made out at the term of the court below, where the trial was had, to have constituted them a portion of the record—a transcript of which might be sent up by the clerk authenticated by his seal of office—it is not now for us to determine. Nor do we decide on the wisdom of the rule which suffers the parties or the judge to furnish a statement of facts at any time before the docketing of the case in the Court of Appeals. It is our duty simply to enforce the statute in the sense in which we understand it; and where the Legislature has fixed no limitation to the time in which the statement of facts may be made out, it is not our duty to prescribe one. Vide McMicken v. Reilly et al., 7 Martin (N. S.), 393, and 8 Martin (N. S.), 303.

The length of time, then, which elapsed between the trial and the sending up of the statement of facts constitutes no valid objection to their admission.

We are also of opinion that there is nothing in our law requiring the facts to be made out by the judge during the *term* time of the inferior court—and that the judge of the district court erred in not admitting the statement sent up in compliance with the mandamus, certified by the chief justice and one of his associates, on the ground that the same was made out during a vacation of the county court. We are not to be understood as regarding with approbation the neglect to procure a statement

---

v. Gajusky. But may appeal from denial of motion to set aside appointment. Arthur v. Reed, 26 T. C. A., 574.

**Note 4.**—Winfried v. Yates, p. 363.

Withdrawal of answer is a waiver of defects and confession of cause of action. Wescott v. Menard, Dal., 503; Cartwright v. Roff, 1 T., 78; Burton v. Lawrence, 4 T., 373; Prewitt v. Perry, 6 T., 260; Grier v. Powell, 14 T., 320; Story v. Nichols, 22 T., 87; Gilder v. McIntyre, 29 T., 89; Goodlett v. Stamps, 29 T., 121; Janson v. Bank, 48 T., 599; Etter v. Dignowitty, 77 T., 212; Graves v. Cameron, 77 T., 273; Wheeler v. Roberts, 2 App. C., sec. 129. Withdrawal

of the facts for any considerable period after the trial of the cause. Where the testimony is oral and is preserved probably only in the frail memory of the parties or of the judge, it is highly proper that the facts should be made up at a very early day after the decision of the case.

We can not perceive that the condition of the appellants would be materially improved by rejecting the statement of facts sent up from below. The judgments in the county court would then have been before the district court without any error in fact or in law, without any statement of facts, bill of exceptions, or other matter or thing which would have justified the reversal or disturbance of the judgment of the inferior court. The appeal must of course have been dismissed; for it is a well established principle, generally recognized in judicial proceedings, that verdicts of juries and judgments of courts will remain valid until some error therein, either in law or fact, is alleged and shown; and that the party who seeks to reverse or avoid the same must take upon himself the burden of showing good grounds for their reversal.

It may however be alleged that the appellant was not in fault; that the record shows a statement of facts to have been made out by him. This however was not agreed to by the appellee. In that event we believe it was his duty to have applied to the judge for a certificate of the facts, and to have shown to the appellate tribunal that such application was made. Without showing this fact, or that he had used due diligence to procure a statement from the judge, the party in default could not have reasonably expected the aid of the superior tribunal, by mandamus or other remedial writ, in bringing up the facts from the lower court; and much less could he have expected that his default should occasion any damage to the appellee or work the reversal of his judgment. In these cases the facts have been examined by the court and they are satisfied with the verdicts of the juries and the judgments thereon rendered. And as the conduct of the appellant seems to be vexatious, and the appeals taken for delay, and as the party appealing had no probable good and sufficient reason for taking such appeals, it is ordered and decreed that the judgment of the district court in both cases be affirmed, with 10 per cent damages on the amounts of said judgments, besides the interest and costs of suit on the same.

---

of answer after demurrer is overruled does not amount to a confession. Frazier v. Todd, 4 T., 461; Janson v. Bank, 48 T., 599. The judgment must conform strictly with the cause of action alleged in the pleadings. Storey v. Nichols, 22 T., 87; Janson v. Bank, 48 T., 599; Etter v. Dignowitty, 77 T., 212; Wheeler v. Roberts, 2 App. C., sec. 129. Judgment nihil dicit partakes of nature of judgment by default and by confession, and is construed liberally in plaintiff's favor. Cartwright v. Roff, 1 T., 78; Burton v. Lawrence, 4 T., 373; Wheeler v. Pope, 5 T., 262; Storey v. Nichols, 22 T., 87; Gilder v. McIntyre, 29 T., 89; Graves v. Cameron, 77 T., 273; Wheeler v. Roberts, 2 App. C., sec. 129.

**Note 5.**—Land Commissioners v. Bell, p 366.

Colonization law of March 25, 1825, repealed by law of April 28, 1832, and latter by law of March 26, 1834. Republic v. Inglish, Dal., 608; Creth v. Republic, 1 T., 83; Ferguson v. Johnson, 11 T. C. A., 413. The law of December 14, 1837 (Gammel's Laws of Texas, vol. 1, p. 1404), which provided that officers and soldiers who arrived in Texas after March 2, 1836, and prior to

## XV.

### REPUBLIC OF TEXAS v. MUMFORD, ALIAS WHITE.

*Bigamy.*

JONES, JUSTICE.—This case came up from the District Court of Robertson County on the two following points, reserved by Justice Mills under the forty-third section of the act organizing the district courts, for the decision of the Supreme Court.

First. Whether a marriage by bond was such a marriage as would support an indictment for bigamy.

Second. That White, the original husband, could not be introduced to prove the loss of the original marriage bond.

As it is unnecessary here to decide whether a marriage by bond, as authorized by the laws of the general council, is valid or not, it will be sufficient ground for the court in disposing of this case to determine that the admission of the testimony of the husband to prove the loss of the marriage bond was erroneous, it being evidence against her who was prosecuted and claimed as his wife. There being no record, or other proof of the marriage produced before the jury in the district court, the judgment below is reversed and the prisoner ordered to be discharged.

*Reversed.*

## XVI.

### WHITEMAN v. GARRETT.

*Appeal from San Augustine County.*

RUSK, CHIEF JUSTICE.—This was an appeal taken from the District Court of San Augustine County. The suit of the plaintiff in the court below was instituted upon a bond to pay money on the part of defendant, and to make title to certain lands on the part of plaintiff.

The court is of opinion that the agreement under seal on which suit was brought in the district court is a bond of mutual obligations, compelling the defendant to pay certain moneys, upon the payment of which the plaintiff bound himself in the penalty of $8000 to make title to certain lands. An action will lie to compel a specific performance of the contract on the part of Garrett. The judgment of the district court is affirmed with costs.

*Affirmed.*

---

August 1, 1836, and who had received an honorable discharge, did not give officers and soldiers whose families resided out of Texas the same quantity of land, as to colonists whose families resided in Texas. Grooms v. State, 1 T., 568; Hill v. Kerr, 78 T., 213. Grants provided for by the Constitution of the Republic and Act of December 14, 1837, applied only to citizens who were in Texas. Republic v. Inglish, Dal., 608; Creth v. Republic, 1 T., 83. A colonist was not entitled to a grant as head of a family, unless his family was resident in Texas. Land Commrs. v. Reily, Dal., 381; Land Commrs.

## No. XVII.

### EDMUND ANDREWS v. ELIZABETH ANDREWS.

(See Note 8.)

*Motion to reverse judgment.*

SHELBY, JUSTICE.—The appellant assigns the following reasons for the sustaining his motion:

1. Because there is no such right known to our laws as that prayed for, in relation to alimony. On this point we differ entirely with appellant's counsel and believe it is a practice sanctioned by all the courts of chancery jurisdiction in the civilized world; for if such was not the case, a cruel man might expel his wife from his house and starve her to death whilst she was seeking redress; therefore, in all cases against guardians where rights of minors are concerned, and who are presumed to have no means of support, as well as in cases of divorce, the court will make interlocutory decrees for the minor and the wife, both predicated upon the same principle, to wit, the helplessness of the complainant; and if a doubt existed on the subject, I conceive the Legislature of our government has put the question to rest in the act entitled "An act amending the judiciary laws, etc.," approved December 18, 1837, section 2, volume 2, page 95. It is said that "the district courts shall have power to hear and determine all suits or actions arising between husband and wife for divorce, and may decree divorces as well from the bonds of matrimony as from bed and board, or for a separate maintenance." This act, it is believed, apart from the rules of equity, which we believe should govern in all such cases, would authorize a decree for a separate maintenance pendente lite.

The second reason assigned for reversal of judgment below is, if such right exists at all, the answer charges adultery in the plaintiff, by which it is forfeited. This reason we consider equally inefficacious with the foregoing one, and will apply to the merits on the final hearing, and not on interlocutory decree, as we view this clearly to be, and such as the district court sitting as a court of equity was bound to make, if he was satisfied in his own conscience that it was just and coisistent with the rules of equity, without regard to any other evidence than that contained in the petition and answer; and that he was not bound as a chancellor to call the intervention of a jury unless to satisfy his own conscience, which must have been easy or he would not have proceeded to pronounce herein; and we conceive all the proceedings below as correct and warranted by the rules of equity, and that therefore the said reasons

v. Walling, Dal., 524; Republic v. Skidmore, Dal., 581; Langford v. Republic, Dal., 588; Republic v. Inglish, Dal., 608; Johns v. Republic, Dal., 621; Grooms v. State, 1 T., 568; Republic v. Skidmore, 2 T., 261; Tichnor v. State, 2 T., 269; Lewis v. Ames, 44 T., 319, 345; Lott v. King, 79 T., 292; Hill v. Moore, 85 T., 335; Byrn v. Kleas, 15 T. C. A., 205; Union Beef Co. v. Thurman, 70 Fed. Rep., 965. An unmarried colonist, under twenty-one years of age, was not entitled to a headright grant. Lockhart v. Republic, 2 T., 127. But it

